IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-00492-RBJ

JULIAN VICTOR MAGANA,

    Applicant,

v.

LOU ARCHULETA, Fremont Correctional Facility Warden, and
CYNTHIA COFFMAN, The Attorney General of the State of Colorado,

    Respondents.

**ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS**

The matter before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 6. After reviewing the pertinent portions of the record in this case, including the Application and Answer, ECF No. 25, the Court determines it can resolve the Application without a hearing, *see* 28 U.S.C. § 2254(e)(2); Fed. R. Governing Section 2254 Cases 8(a), and concludes that the action should be dismissed.

## I. BACKGROUND

Applicant is a prisoner in the custody of the Colorado Department of Corrections. He currently is incarcerated at the Fremont Correctional Facility in Cañon City, Colorado, pursuant to his conviction and sentencing in State of Colorado Criminal Case No. 10CR1857. The Colorado Court of Appeals (CCA), in the denial of Applicant's direct appeal, summarized the underlying facts as follows:

> According to the prosecution's trial evidence, defendant touched and penetrated the victim's vagina with his finger and penis on multiple occasions.

1

> Prior to trial, the People asked that the victim, defendant's daughter, who was ten years old at the time of trial, be permitted to testify via closed circuit television (CCTV). Defendant objected. After a hearing at which the victim's counselor testified, the court permitted the victim to give testimony in his chambers (outside the presence of defendant), which was displayed via CCTV in the courtroom.
>
> The jury returned guilty verdicts on all of the charges tried.

*People of the State of Colo. v. Magana*, No. 12CA1073, 1 (Colo. App. July 3, 2014); ECF No. 12-2 at 2.

## II. HABEAS CLAIMS

Applicant, acting *pro se*, initiated this 28 U.S.C. § 2254 action on February 25, 2016, by submitting an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. On March 28, 2016, pursuant to a court order, Applicant filed an Amended Application, which is the operative pleading in this action. Applicant asserts one claim in the March 28 Application as follows:

> [His] right to confront accusatory witness impermissibly infringed when the trial court's decision authorizing the use of closed circuit television testimony was contrary to and an unreasonable application of *Maryland v. Craig*, 497 U.S. 836 (1990); U.S. Const. amend. VI; 28 U.S.C. § 2254(d)(1) (2) . . . . [A]s a whole, testimony from the therapist that the CCTV procedure was necessary was insufficient within the scope of *Craig*.

ECF No. 6 at 6.

On March 30, 2016, Magistrate Judge Gordon P. Gallagher entered an order directing Respondents to file a Pre-Answer Response and address the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intended to raise either or both of these defenses. Respondents filed a Pre-Answer Response, ECF No. 12, on April 19, 2016. Applicant did not reply to the Response. Respondents concede in the Pre-Answer Response that the Application is timely and the claim is exhausted. ECF No. 12 at 3 and 6. On August 22, 2016, the Court directed

2

Respondents to file an Answer that addresses the merits of Applicant's claim. Respondents filed the Answer on October 25, 2016. *See* ECF No. 25. Applicant requested an extension of time to reply, which was granted. *See* ECF Nos. 26 and 27. Applicant, nonetheless, has failed to submit a reply.

**A. *Pro Se* Standard of Review**

Applicant is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (pro se complaint held to less stringent standards than formal pleadings drafted by lawyers). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**B. 28 U.S.C. § 2254**

Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). The "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from this Court has become time barred or has been disposed of." *Greene v. Fisher*, 565 U. S. 34, 39 (2011) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting

4

> *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08, 120 S. Ct. 1495. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply. *Carter* [*v. Ward*, 347 F3d. 860, 864 (10th Cir. 2003)] (quoting *Valdez* [*v. Ward*, 219 F.3d 1222, 1229-30 10th Cir. 2000]).

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). This Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. "[E]ven a strong case for relief does not mean the state court's

5

contrary conclusion was unreasonable." *Id.* at 102. (citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03(internal quotation marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671. Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct (including the CCA), *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial

that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).

Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637 (citations and internal quotation mark is omitted). "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). Grave doubt exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000). "In sum, a prisoner who seeks federal habeas corpus relief must satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis v. Ayala*, ─ U.S. ─, 135 S. Ct. 2187, 2199 (2015) (citing *Fry*, 551 U.S. at 119-120).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 562 U.S. at 98. ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning") (citations omitted). Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court

7

adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [its] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the [applicant's] claims." *Id.* (citation omitted). Likewise, the Court applies the AEDPA (Antiterrorism and Effective Death Penalty Act) deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. ANALYSIS

#### A. Confrontation Under *Craig*

Applicant asserts that the trial court misapplied the test set forth in *Maryland v. Craig*, 497 U.S. 836, 840-856 (1990)." ECF No. 6 at 6. Applicant further asserts the record "belies" the therapist's claim that the accusatory witness was unable to reasonably communicate and the use of a CCTV was necessary. *Id.* Applicant further contends the therapist's testimony was insufficient within the scope of *Craig*. *Id.* Applicant also contends that the victim's testimony was likely coerced and fabricated due to extensive therapy sessions. *Id.* Applicant further

8

contends that, coupled with the motives of a drug addicted mother, the credibility of the testimony was lacking and did not merit a CCTV procedure. *Id.* Finally, Applicant concludes the use of the CCTV prevented the jury from observing the demeanor of the alleged victim. *Id.*

**1. Trial Court Error/Use of CCTV**

The CCA addressed Applicant's trial court error claim as follows:

> A. Legal Standards Regarding Testimony by CCTV
>
> While the Confrontation Clause " 'reflects a preference for face-to-face confrontation at trial,' " that preference " 'must occasionally give way to considerations of public policy and the necessities of the case.' " *Maryland v. Craig*, 497 U.S. 836, 848-49 (1990) (quoting *Ohio v. Roberts*, 448 U.S. 56, 63 (1980), and *Mattox v. United States*, 156 U.S. 237, 243 (1895)). Thus, denial of the physical face-to-face confrontation may be dispensed with "where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.
>
> In *Craig*, the Supreme Court concluded that a Maryland statute permitting child victims to testify via CCTV, upon a trial court finding that testifying "in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate," did not run afoul of the constitutional confrontation right. *Id.* at 841 (internal quotation marks omitted).
>
> The Supreme Court held that the state interest in protecting child witnesses from the trauma of testifying in child abuse cases is sufficiently important to justify the use of a special procedure that permits the child witness to testify without confronting the defendant face-to-face. *Id.* at 852-55. However, the Supreme Court required that the finding of necessity be case-specific: The trial court must determine whether the CCTV procedure "is necessary to protect the welfare of the particular child witness who seeks to testify," that the witness "would be traumatized, not by the courtroom generally, but by the presence of the defendant," and "that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis*, *i.e.*, more than mere nervousness or excitement or some reluctance to testify." *Id.* at 855-56 (internal quotation marks omitted). However, a court need not personally observe the trauma that questioning a child sexual assault victim in the presence of the defendant/abuser would inflict before permitting the CCTV procedure. *Id.* at 858.
>
> Like Maryland, Colorado has enacted a statute permitting the use of CCTV to televise the testimony of certain witnesses into the courtroom. The Colorado statute allows a witness who is less than twelve years of age at the time of trial to testify via CCTV provided:

9

(I) The testimony is taken during the proceeding; [and]

(II) The judge determines that testimony by the witness in the courtroom and in the presence of the defendant would result in the witness suffering serious emotional distress or trauma such that the witness would not be able to reasonably communicate.

§ 16-10-402(1)(a), C.R.S. 2013.

### B. Application

#### 1. Test Applied by the Trial Court

Defendant first contends that the trial court failed to apply the correct test in determining that the victim could testify by CCTV. Specifically, defendant argues that *People v. Phillips*, 2012 COA 176, held that the trial court must make both the requisite findings under *Craig* and carry out the statutory procedure. Although defendant's argument is unclear, he acknowledges that the trial court considered the requisite statutory findings. We therefore read his argument to be that the trial court here failed to apply the constitutional requirements spelled out in *Craig*. [footnote omitted]. We conclude that, while the trial court did not explicitly lay out the test in the precise terms announced in *Craig*, it nonetheless applied the correct test in allowing CCTV testimony.

Importantly, the requisite finding in the Colorado statute is not independent of the *Craig* requirements; rather, the statute embodies the *Craig* requirements. Indeed, the Colorado language is nearly identical to the finding required under the Maryland statute "that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Craig*, 497 U.S. at 840 n.1 (internal quotation marks omitted). This language satisfies the emotional distress finding in *Craig*. *See id.* at 841, 856. Moreover, the Colorado statute adds the language "and in the presence of the defendant," § 16-10-402(1)(a), thus also explicitly addressing the second prong of *Craig*.

Consequently, we find no error in the trial court focusing its analysis on the more exacting statutory framework. *Cf. Craig*, 497 U.S. at 856 ("We need not decide the minimum showing of emotional trauma required for use of the special procedure, however, because the Maryland statute, which requires a determination that the child witness will suffer 'serious emotional distress such that the child cannot reasonably communicate' . . . clearly suffices to meet constitutional standards.").

Finally, we note that the trial court was aware of the requirements announced by the Supreme Court, as the trial court noted in its ruling that it had

> reviewed relevant case law, including *Craig*. Further, the trial court made extensive findings regarding the impact that attempting to testify about the abuse in the presence of defendant would have on the victim, which findings support both the statutory and *Craig* requirements.
>
> Accordingly, we disagree with defendant's contention that the court failed to apply the correct test.

ECF No. 12-2 at 3-8.

The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

The United States Supreme Court, however, has "recognized that a State's interest in the protection of minor victims of sex crimes from further trauma and embarrassment is a compelling one." *Craig*, 497 U.S. at 852 (internal quotation marks and citations omitted). "The trial court must hear evidence and determine whether use of the one-way circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Craig*, 497 U.S. at 855 (citing *Globe Newspaper Co. v. Superior Court of Norfolk County,* 457 U.S. 596, 608-09 (1982) (compelling interest in protecting child victims does not justify a mandatory trial closure rule). The trial court must find that the child witness would be traumatized by the presence of the defendant and not just the courtroom generally. *Craig*, 497 U.S. at 856. The emotional distress suffered by the presence of the defendant must be more than *de minimis* or mere nervousness or excitement or reluctance to testify. *Id.* (citations and quotation marks omitted). The constitutional standard for use of a CCTV is that a child witness will suffer "serious emotional

distress such that the child cannot reasonably communicate." *Id.* (citation and quotation marks omitted).

Finally, in *Craig*, the Supreme Court declined to "establish, as a matter of federal constitutional law, any such categorical evidentiary prerequisites for the use of the one-way television procedure," which in particular were to require the trial court to observe the "children's behavior in the defendant's presence" and to "explore less restrictive alternatives to the use of the one-way closed circuit television procedure." *Craig*, 497 U.S. at 859-60.

The Court has reviewed the transcript of the pre-trial hearing, during which the prosecution's motion to allow the victim/witness to use the CCTV to testify was considered and granted. Dec. 10, 2011 Trial Tr. After testimony by the victim's counselor[1] and arguments by the prosecution and Applicant, the trial court identified the issue at hand as being "whether the testimony by the witness in the courtroom and in the presence of the defendant would result in the witness suffering serious emotional distress or trauma such that the witness would not be able to reasonably communicate." *Id.* at 30. The trial court went on to find that it could not "imagine what more pertinent testimony the Court could hear than the testimony of a therapist who had been treating this victim for a period of over half a year and seeing her on a weekly basis." *Id.*. The court also determined that given the witness was not able to discuss the specifics of the abuse in her therapy sessions there is support to not make it even more difficult for the victim to have to testify in the presence of the defendant. *Id.* at 30-31.

The trial court also found that the counselor in response to a question taken from the state statute stated that in her opinion the victim would be unable to reasonably communicate based on trauma, which the counselor had confirmed based on a PTSD (Post-Traumatic Stress Disorder)

---

[1] Applicant refers to Ms. Vaccarella as a therapist. During direct examination, Ms. Vaccarella states that she is a "licensed professional counselor." Dec. 20, 2011 Trial Tr. at 4.

diagnosis. *Id.* The court further found based on the counselor's testimony that it is difficult for victims of familial sex assault to testify, particularly where there has been long term abuse, as was situation in this case. *Id.* Furthermore, the trial court relied on a specific school example, given by the counselor, where the victim shut down in the presence of a conflict that required her to tell someone about mistreatment by her teacher, to support the finding that it would be hard to imagine any more heightened conflict than being in the presence of the alleged perpetrator and to have to testify about the abuse by the perpetrator. *Id.*

Finally, the trial court referenced not only to state cases, but to *Craig* in denying any constitutional challenge based on the confrontation clause and due process. *Id.* at 32.

Based on the above findings, nothing set forth in Applicant's March 28 Application demonstrates how the trial court erred in allowing the victim/witness to testify via a CCTV. Applicant's claim that the trial court erroneously applied the test in *Craig* is contradicted by the state court record. The trial court relied on the state statute, which was found by the CCA to embody *Craig* and model the Maryland statute that was at issue in *Craig*.

The Maryland statute as pertinent to the issue in both *Craig* and the instant case reads as follows:

> "(a)(1) In a case of abuse of a child as defined in § 5–701 of the Family Law Article or Article 27, § 35A of the Code, a court may order that the testimony of a child victim be taken outside the courtroom and shown in the courtroom by means of a closed circuit television if:
> 
> "(i) The testimony is taken during the proceeding; and
> 
> "(ii) The judge determines that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate . . . .

*See* Maryland Cts. & Jud. Proc. Code Ann. § 9-102 and Judicial Proceedings Article of the Annotated Code of Maryland (1989).

13

The pertinent part of the Colorado statute reads as follows:

(1)(a) When a witness at the time of a trial is a child less than twelve years of age, or is a person who has a developmental disability as defined in section 27-10.5-102(11)(a), C.R.S., the court may, upon motion of a party or upon its own motion, order that the witness's testimony be taken in a room other than the courtroom and be televised by closed-circuit television in the courtroom if:

(I) The testimony is taken during the proceeding; [and]

(II) The judge determines that testimony by the witness in the courtroom and in the presence of the defendant would result in the witness suffering serious emotional distress or trauma such that the witness would not be able to reasonably communicate . . . .

Colo. Rev. Stat. § 16-10-402 (2005).

Given the similarity of the Maryland and Colorado statutes, and of the facts in this case to those in *Craig*, this Court finds the language of the Colorado statute embraces *Craig*. Also, the state court record unequivocally provides evidence that the requirements set forth in *Craig* were followed. Furthermore, Applicant's vague and conclusory claims that the victim's testimony was "likely influenced by extensive contact through therapists" . . . , coupled with the motives of a drug addicted mother," ECF No. 6 at 6, do not provide clear and convincing evidence rebutting the presumption that the state court's factual determinations are correct, as required under § 2254(e)(1).

This Court, therefore, finds that the trial court's decision to allow the victim to present testimony via CCTV was not contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court or a decision that was based on an unreasonable determination of the facts. This claim lacks merit and will be denied.

**2. Counselor Testimony/Lack of Sufficient Evidence**

The CCA addressed Applicant's lack of evidence claim as follows:

> 2. Evidence Supporting CCTV Determination
>
> Defendant further contends that the evidence does not support the determination that the requisite conditions of *Craig* and the Colorado statute were met. Again, we disagree.
>
> The victim's counselor, who specializes in victims of crime and trauma, testified that significant factors generally affecting a victim's ability to testify include: a close connection to the defendant/abuser, the duration of the abuse, and perceived danger from the defendant/abuser. Specific to the victim in this case, the counselor, who had met with the victim almost weekly for the previous eight months, testified:
>
> • defendant is the victim's father;
>
> • the abuse occurred over a third of the victim's life;
>
> • there are allegations of physical abuse in addition to sexual abuse, the victim has commented that she is convinced she would be hurt again physically, and the victim has "a lot of fear that she and her family would be killed by family members of [defendant]";
>
> • the victim has post-traumatic stress disorder;
>
> • the victim has recurrent distressing dreams;
>
> • the victim does not want to go near the house where the abuse occurred or see family members affiliated with defendant;
>
> • the victim avoids speaking about the abuse in counseling and will shift mid-conversation to something else;
>
> • the victim will often "shut down" when the abuse is discussed, and will also shut down about "other events where a conflict is occurring," such that the counselor does not "know with confidence that she could present clearly in the presence of the defendant";
>
> • when the victim is "confronting or telling the truth and someone else would get in trouble," this triggers a shutdown; and
>
> • when the victim shuts down, she completely diverts her eyes and will not speak.

15

> The prosecution summed up its questioning of the counselor by asking:
>
> > [Prosecutor]: [O]nce again, in regard to your opinion about whether testimony by [the victim] in the courtroom in the presence of the defendant would result in [the victim] suffering serious emotional distress or trauma such that she would not be able to reasonably communicate in the courtroom, what is your opinion?
> >
> > [Counselor]: I'm not convinced she could reasonably communicate.
>
> The trial court found, based on the sum of the counselor's testimony, that the People had established that testimony by the witness in the courtroom and in the presence of defendant would result in the witness suffering serious emotional distress or trauma such that the witness would not be able to reasonably communicate.
>
> Considering the evidence as a whole, there was factual support for the trial court's findings. Accordingly, we perceive no error in the trial court's order permitting the victim to testify via CCTV.

ECF No. 12-2 at 8-10.

The Court has reviewed the counselor's testimony. *See* Dec. 20, 2011 Trial Tr. The CCA's decision sets forth with accurate specificity the counselor's diagnosis of the victim's emotional state. Applicant's vague and conclusory claim that the victim's testimony was influenced by "extensive" contact with "numerous therapists," ECF No. 6 at 6, fails to provide clear and convincing evidence that the counselor failed to demonstrate that the victim would be unable to reasonably communicate in the presence of Applicant.

The counselor's testimony provides examples of the victim's inability to discuss the abuse or to communicate about a conflict, which would result in someone getting in trouble. Also, the counselor stated that (1)Applicant is the victim's father; (2) the abuse continued for a third of the victim's life; and (3) the victim suffers from PTSD diagnosis, has distressful dreams, and does not want to return to the home where the abuse took place. This evidence, and additional findings

16

identified in the CCA's decision, were sufficient to support the trial court's decision to allow the victim to present testimony via CCTV.

The CCA's denial of this claim was not contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court or a decision that was based on an unreasonable determination of the facts. This claim lacks merit and will be denied.

## IV. CONCLUSION

Based on the above findings, Applicant's claims lack merit and the 28 U.S.C. § 2254 Application must be dismissed.

## V. ORDERS

Accordingly, it

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 6, is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also

pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED December 7, 2017.

BY THE COURT:

*[signature: Brooke Jackson]*

R. Brooke Jackson
United States District Judge